ASH

1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9    Kenneth McDonald,                         No.    CV-23-01275-PHX-DWL (DMF)

10                          Plaintiff,

11    v.                                       **ORDER**

12    City of Phoenix, et al.,

13                          Defendants.

14

15          Plaintiff Kenneth McDonald, who is not in custody, has filed a *pro se* complaint

16    pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed in District Court

17    Without Prepaying Fees or Costs (Doc. 2).[1]  Defendant City of Phoenix has also filed a

18    Motion to Exceed Page Limit (Doc. 9) and proposed Motion to Dismiss (Doc. 8).  The

19    Motion to Dismiss is fully briefed (Docs. 10, 11).

20          The Court will grant the Motion to Exceed Page limit and direct the Clerk of Court

21    to file the Motion to Dismiss; grant in part and deny in part the Motion to Dismiss; order

22    Defendants Sleeper, Alvarado, Blalock, Swartz, Gomez, Mereno, Turiano, and the City of

23    Phoenix to answer Counts Three, Six, Seven, Eight, Nine, Eleven, Twelve, and Thirteen,

24    as set forth herein; and dismiss the remaining claims and Defendants without prejudice.

25    **I.      Application to Proceed**

26          Plaintiff' s Application to Proceed indicates he lacks funds to pay for this action.

27

28    [1]    Plaintiff has also filed a second "Motion for Leave to Proceed In Forma Pauperis" (Doc. 7).  Because the Court will grant Plaintiff's first Application to Proceed, the "Motion for Leave to Proceed In Forma Pauperis" will be denied as moot.

TERMPSREF

1   Accordingly, the Court will grant the Application to Proceed. 28 U.S.C. § 1915(e).

2   Plaintiff is not required to pay the filing fees for this action.

3   **II.      Statutory Screening of In Forma Pauperis Actions**

4          Pursuant to 28 U.S.C. § 1915(e)(2), in a case in which a plaintiff has been granted

5   in forma pauperis status, the Court:

6          shall dismiss the case at any time if the court determines that (A) the
7          allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or
           malicious; (ii) fails to state a claim on which relief may be granted; or
8          (iii) seeks monetary relief against a defendant who is immune from such
9          relief.

10   28 U.S.C. § 1915(e)(2).

11          A pleading must contain a "short and plain statement of the claim *showing* that the

12   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does

13   not demand detailed factual allegations, "it demands more than an unadorned, the-

14   defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15   (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

16   conclusory statements, do not suffice." *Id.*

17          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

18   claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

19   550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content

20   that allows the court to draw the reasonable inference that the defendant is liable for the

21   misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for

22   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

23   experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual

24   allegations may be consistent with a constitutional claim, a court must assess whether there

25   are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

26          But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

27   must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342

28   (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Complaint**

In his 15-count Complaint, Plaintiff names as Defendants: the City of Phoenix; interim Phoenix Police Chief Michael Sullivan; and "City of Phoenix Employees" Jarret Sleeper, Brian Alvarado, Chris Turiano, JD Curtis Merena, Tristan A. Blalock, Eric S. Gomez, Michael Hiatt, Matthew Swartz, Jason Winfield, Zabatka Colbert, David Seitter Ii, Brian Freudenthal, Brian Herricht, and Robert Warren.[2]  Sullivan is named in both his individual and official capacities, while the remaining Defendants are named in their individual capacities only.   Plaintiff seeks monetary relief, punitive damages, and injunctive relief in the form that the individually named Defendants be fired and criminally charged.[3]

Plaintiff's claims arise from a common core of allegations, as follows: On August 2, 2022, Plaintiff "knocked on the passenger side window of a police vehicle to speak with the officer inside."  Defendant Sleeper exited the vehicle and "[a] dialogue began," during which Plaintiff called Sleeper a "dumbass."   At that point, Plaintiff "was suddenly physically apprehended, placed in custodial restraints (handcuffs), and closed into the backseat of the police vehicle without warning or explanation."  Sleeper then called for a mobile fingerprinting device, and multiple other officers responded.  Defendant Turiano opened the door of the police vehicle and told Plaintiff to exit so that fingerprints could be obtained.  Plaintiff stated that he would refuse to give his fingerprints, and voluntarily exited the vehicle with his hands closed.  Although Plaintiff was still handcuffed, Defendants Turiano, Sleeper, and Alvarado "grabbed Plaintiff and took him to the ground."

---

[2]    Defendants Sleeper, Alvarado, Turiano, Merena, Gomez, and Herricht appear to be Phoenix Police Officers.  Defendants Colbert, Winfield, Warren, and Blalock appear to be Phoenix Police Sergeants.  Defendant Seitter Ii appears to be a Phoenix Police Lieutenant. Defendant Swartz appears to be a Phoenix Police Detective.   Defendant Fruedenthal appears to be a Phoenix Police Commander.  It is not clear who Defendant Michael Hiatt is, and Plaintiff makes no allegations against him.  Accordingly, Defendant Hiatt will be dismissed.

[3]    The federal courts have no authority to terminate the employment of, or criminally charge, state officials.  Accordingly, Plaintiff's request for injunctive relief is dismissed.

The officers then "used extreme force," including "straining [Plaintiff's] wrists to the point of lacerations and extreme swelling," employing "mandibular nerve pressure points," and "press[ing] Plaintiff's face into the pavement while Plaintiff pleaded he could not breathe." Plaintiff's "skin was scraped off his face and nose." Defendants Sleeper and Gomez also "placed [their] knees and full body weight . . . on Plaintiff's back, compressing [his] lungs, impairing Plaintiff's ability to breathe, and causing extreme panic."

Plaintiff was then placed back in the police vehicle without his fingerprints having been taken. Several minutes later, Defendant Turiano "pulled [Plaintiff] out of the police vehicle again, ostensibly stating he would remove Plaintiff to loosen handcuffs," but instead "again attempted to obtain fingerprints." "[D]ue to intense fear of further injuries," Plaintiff did not resist. After Plaintiff's fingerprints were obtained, Turiano "grabbed Plaintiff's hand, still in restraints, and forced it up and back with the intention to cause further injury."

The officers then "conspire[d] to fabricate charges and further cover up the crimes they intentionally committed," by turning body cams off and on, calling the fire department to "clean" Plaintiff before pictures were taken, and "altering the description of Plaintiff to fit the description of another unrelated suspect who was wanted for an incident involving a firearm." The officers' reports were then "reviewed and moved forward for approval" to Defendants Colbert, Winfield, Herricht, Seitter Ii, Freudenthal, and Warren," all of whom "failed to report, after review of the body cam footage, that the arrest was made with no probable cause, and that excessive force was used to obtain fingerprints."

Plaintiff was charged with trespassing, obstructing government operations, aggravated assault, and resisting arrest. All of Plaintiff's charges were subsequently dismissed. However, as a result of the charges, Plaintiff's arrest "show[s] up on background checks," and Plaintiff "lost his job with Uber Eats and has not been able to find work since the incident."

Accordingly, Plaintiff asserts the following claims for relief:

- **Count One**: Unlawful Imprisonment pursuant to Arizona Revised Statutes § 13-

1303, brought against the City of Phoenix, Sullivan, and Sleeper;

- **Count Two**: Aggravated Assault pursuant to Arizona Revised Statute § 13-1204, brought against the City of Phoenix, Sullivan, Sleeper, Alvarado, Turiano, Gomez, and Merena;

- **Count Three**: Malicious Prosecution, False Arrest, Libel, and Slander pursuant to Arizona Revised Statute § 12-541, brought against the City of Phoenix, Sullivan, Sleeper, Alvarado, Blalock, and Swartz;

- **Count Four**: Conspiracy pursuant to Arizona Revised Statute § 13-1003, brought against the City of Phoenix, Sullivan, Sleeper, Alvarado, Gomez, Merena, and Turiano;

- **Count Five**: *Monell* liability pursuant to § 1983, brought against the City of Phoenix;

- **Count Six**[4]: Excessive Force in violation of the Fourth Amendment, brought against Sleeper, Gomez, Merena, Alvarado, Turiano, and Sullivan;

- **Count Seven**: False arrest[5] in violation of the Fourth Amendment, brought against Sleeper and Sullivan;

- **Count Eight**: retaliation in violation of the First Amendment, brought against Sleeper and Sullivan;

- **Count Nine**: Failure to Intervene in violation of the Eighth and Fourteenth Amendments, brought against Sleeper, Merena, Alvarado, Turiano, Gomez, and Sullivan;

- **Count Ten**: Civil Conspiracy[6], brought against the City of Phoenix;

---

[4]    Plaintiff lists Count Five twice, and the count number for counts Six through Fifteen is thus off by one (*i.e.*, Count Six is listed as Count Five, Count Seven is listed as Count Six, etc.).  The Court will refer to the Counts using the numbering order set forth in this Order.

[5]    Although Plaintiff styles this claim as "unreasonable seizure through malicious arrest," it is best construed as a Fourth Amendment false arrest claim.  To prevail on a Fourth Amendment false arrest claim, a plaintiff must show there was no probable cause for the arrest.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citation omitted).

[6]    Plaintiff indicates in his response to Defendant's Motion to Dismiss that he incorrectly labeled this count as one for gross negligence.  (Doc. 10 at 13).  As the allegations contained in the claim itself are clearly related to a claim for civil conspiracy, the Court construes Count Ten as one for civil conspiracy brought pursuant to Arizona law against the City of Phoenix.

1    - **Count Eleven**: Aiding and Abetting pursuant to Arizona state law, brought against

2    the City of Phoenix;

3    - **Count Twelve**: Intentional Infliction of Emotional Distress pursuant to Arizona

4    state law, brought against the City of Phoenix;

5    - **Count Thirteen**: Gross Negligence pursuant to Arizona state law, brought against

6    the City of Phoenix;

7    - **Count Fourteen**: False Light/Invasion of Privacy pursuant to Arizona state law,

8    brought against the City of Phoenix; and

9    - **Count Fifteen**: Defamation pursuant to Arizona state law, brought against the City

10   of Phoenix.

11       Defendant City of Phoenix moves to dismiss the Complaint on the basis of improper

12   service; failure to properly serve a notice of claim; immunity pursuant to Arizona Revised

13   Statute (A.R.S.) § 12-820.05; immunity from punitive damages; and failure to state a claim.

14   **IV.    Discussion**

15       **A.    Improper Service**

16       Defendant City of Phoenix moves for dismissal, in part, on the basis that Plaintiff

17   failed to include a summons when serving Defendant with the Complaint.

18       The Court reviews *pro se* pleadings seeking relief from governmental entities or

19   officials as well as pleadings filed by litigants proceeding *in forma pauperis*, and the Clerk

20   of Court will not issue summons—even when requested (*see* Doc. 6)—until the Court has

21   determined that an answer is required.  Accordingly, Defendant's Motion to Dismiss is

22   denied to the extent it seeks dismissal for failure to properly serve.  Fed. R. Civ. P. 4(m).

23   Plaintiff must properly serve any Defendant(s) required by this Order to answer the

24   Complaint.

25       **B.    Notice of Claim**

26       Defendant City of Phoenix asserts that Plaintiff's state-law claims against the

27   individual Defendants must be dismissed because Plaintiff failed to properly serve them

28   with a notice of claim, as required by A.R.S. § 12-821.01.

**TERMPSREF**

Under Arizona law, a plaintiff must file a notice of claim with the public employee within 180 days of the incident from which the claim arose, otherwise the action is barred and may not be maintained.  Ariz. Rev. Stat. § 12–821.01(A).  In addition, the plaintiff must give notice to a public employee's employer: "[a] claimant who asserts that a public employee's conduct giving rise to a claim for damages was committed within the course and scope of employment must give notice of the claim to both the employee individually and to his employer."  *Crum v. Superior Court In and For Cnty. of Maricopa*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996).  For service of process on an individual, the Arizona rules of civil procedure state:

> [A]n individual may be served by: (1) delivering a copy of the summons and the pleading being served to that individual personally; (2) leaving a copy of each at that individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Ariz. R. Civ. P. 4.1(d).

Arizona courts have held that plaintiffs who do not strictly comply with section 12-821.01(A) are barred from bringing suit.  *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) ("Compliance with the notice provision of § 12-821.01(A) is a mandatory and essential prerequisite to such an action.").  "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of . . . § 12-821.01(A)."  *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 144 P.3d 1254, 1256 (Ariz. Ct. App. 2006).

Defendant City of Phoenix asserts that "there is no record nor any indication that Plaintiff served any of the individual defendants with a Notice of Claim."  (Doc. 8 at 6).[7] Plaintiff responds that he "filed the Notice of Claim with the Phoenix City Clerk . . . on January 19, 2023, and therefore did file with 'persons authorized to accept service for the public entity . . . or public employee . . . within one hundred eighty days after the cause of

---

[7]    Defendant City of Phoenix does not argue that Plaintiff failed to properly serve it with a notice of claim.

action accrues." (Doc. 10 at 4). Defendant City of Phoenix replies that "Plaintiff has provided the Court with no evidence or authority that any of the individual defendants ha[ve] authorized the Phoenix City Clerk to accept service on their behalf." (Doc. 11).

On the one hand, there is a strong argument that Plaintiff failed to comply with A.R.S. § 12-821.01 with respect to the individual Defendants. Plaintiff does not contend that he personally served any of those Defendants with a notice of claim—instead, he contends that he served the Phoenix City Clerk with the relevant notices directed toward those individuals. But this does not appear to be a permissible method of service in this context. *See, e.g., Udd v. City of Phoenix*, 2018 WL 6727267, *4-7 (D. Ariz. 2018) (concluding that plaintiff failed to comply A.R.S. § 12-821.01 by serving an employee of the Phoenix City Clerk's office with a notice of claim directed toward the assistant police chief, noting that "under City of Phoenix Administrative Regulation 4.43(3), of which the Court takes judicial notice, it is clear that although employees of the City Clerk's office are authorized to accept service for many different entities, they are not authorized to accept service on behalf of someone in [the assistant chief's] position," and citing other cases reaching similar conclusions). On the other hand, it is not clear to the Court (and the City of Phoenix does not explain) how the City has standing to move to dismiss Plaintiff's claims against the individual Defendants on this basis. The motion to dismiss is only brought by the City of Phoenix. Additionally, although the Court has independently reviewed the sufficiency of some of Plaintiff's claims against the individual Defendants in later portions of this order, that review is being performed pursuant to Court's screening function under 28 U.S.C. § 1915, which only looks to the sufficiency of the complaint. Here, the City's arguments regarding non-compliance with A.R.S. § 12–821.01(A) go beyond the four corners of the complaint and turn on facts developed through the parties' motion papers. Thus, although this ruling may simply constitute the delaying of the inevitable, the motion to dismiss will be denied without prejudice to the extent it seeks dismissal of Plaintiff's state-law claims against the individual defendants.[8]

---

[8]    To be clear, the individual Defendants may move for dismissal pursuant to § 12-

**C.    Immunity**

Defendant City of Phoenix next argues that "[w]hile it is unclear what causes of action Plaintiff is attempting to assert against the City, to the extent the Court determines he is asserting a claim for negligence, under Arizona law, governmental entities are entitled to qualified immunity from simple negligence for the discretionary actions of their police officers made in the course of their official duties."  (Doc. 8 at 7.)

The City is correct that, under Arizona law, "in order to assure continued vigorous police work," police officers and other investigative agents cannot be held liable for mere negligence.  *Landeros v. City of Tucson*, 831 P.2d 850, 851 (Ariz. Ct. App. 1992) (internal citation omitted); *see also  Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1017 (D. Ariz. 2012) ("Police making discretionary decisions while acting in their official capacity in Arizona are only liable if the plaintiffs establish gross negligence.'") (cleaned up). However, as summarized above, Plaintiff does not assert any "mere negligence" claims.

The City also asserts that it is immune from Plaintiff's state-law claims pursuant to A.R.S. § 12-820.05(B) "to the extent that any of Plaintiff's claims under state law are based on his allegations that City of Phoenix Police Officers used excessive force against him and unlawfully arrested him."  (Doc. 8 at 7-8).  Under that statute, "[a] public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action."

Under Arizona law, a person commits misdemeanor assault by

> 1.    Intentionally, knowingly or recklessly causing any physical injury to another person; or
>
> 2.    Intentionally placing another person in reasonable apprehension of imminent physical injury; or
>
> 3.    Knowingly touching another person with the intent to injure, insult or provoke such person.

Ariz. Rev. Stat. §13-1203.  A person commits felony aggravated assault if he commits an

---

821.01 if and when they are properly served.

1    assault and "causes serious physical injury to another."  *Id.* § 13-1204.  Similarly, under

2    Arizona Revised Statutes section 13-1303, a person commits felony unlawful

3    imprisonment by "knowingly restraining another person" that causes physical injury to that

4    person.  Ariz. Rev. Stat. § 13-1303(A), (C).  If the person committing the restraint is a

5    police officer, the officer is nevertheless guilty of unlawful imprisonment if he was not

6    "acting in good faith in the lawful performance of his duty."  Ariz. Rev. Stat. § 13-

7    1303(B)(1).

8         In *State v. Heinze*, the Arizona Court of Appeals found that the limitation on a public

9    entity's liability under a different Arizona statute, section 41-621,[9] which likewise

10   excluded from public indemnification acts or omissions "determined by a court to be a

11   felony," did not require a felony conviction or the determination of a criminal court for the

12   exclusion to apply, but that "any court may make the requisite determination."  993 P.2d

13   1090, 1094 (Ariz. App. 1999).  In *Ryan v. Napier*, the Arizona Supreme Court also cited

14   *Heinze* for the proposition that "a felony conviction is not a prerequisite to the application

15   of the felony exclusion" in either section 41-621(L) or in the similarly worded section 12-

16   820.05(B).  425 P.3d 230, 237 (Ariz. 2018) (citing *Heinze*, 993 P.2d at 1094).

17        Courts in this District have also relied on *Heinze* to conclude that, like the

18   immunity/indemnification exception found in section 41-621, "no felony conviction is

19   required for immunity to apply under A.R.S. § 12–820.05(B)."  *Al-Asadi v. City of Phoenix*,

20   2010 WL 3419728, *5 (D. Ariz. 2010).  In *Al-Asadi*, the court reasoned that

21        Section 12–820.05, like the insurance coverage statute at issue in *Heinze*,
22        does not specify that the public employee must have been convicted of a
         felony.  Nor does it provide that the public entity's immunity must arise from
23        an act or omission determined to be a felony by a criminal court.

24

25   [9]    The immunity statute in *Heinze*, currently Arizona Revised Statutes section 41-
26   621(L), excludes from liability: "Losses against this state and its departments, agencies,
     boards and commissions *that arise out of and are directly attributable to an act or omission*
27   *determined by a court to be a felony* by a person who is provided coverage pursuant to this
     article *unless the state knew of the person's propensity for that action*, except those acts
28   arising out of the operation or use of a motor vehicle."  *Id.* (emphasis added).

*Id.* (internal citations omitted).  Likewise, in *Cameron v. Gila County*, the court concluded that "A.R.S. § 12–820.05(B) may provide immunity even without a prior felony conviction. By the statute's own terms, any court can make the felony determination."  2011 WL 2115657, *4 (D. Ariz. 2011) (citing cases); *see also McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003) ("the Court finds that the Arizona Supreme Court would follow the reasoning of [*Heinze*], and allow A.R.S. § 12–820.05(B) to apply despite the lack of a prior criminal court finding that Scott's action constituted a felony").

Defendant City of Phoenix argues that because Plaintiff has failed to allege any facts to support that it "knew of a propensity on the part of the individual officers to commit aggravated assault or [unlawful imprisonment]," it is therefore immune from Plaintiff's state-law claims against it pursuant to section 12-820.05(B).  (Doc. 8 at 8-9; *see also* Doc. 11 at 5 ["Plaintiff fails to point to any allegations in his Complaint to demonstrate that the City knew of a propensity on the part of the individual officers to commit aggravated assault or arrest individuals without probable cause and cause them physical injury."].)  In the complaint, Plaintiff alleges that in 2004, Defendant Turiano "was found to have placed his hands around, and squeezed the throat, of a suspect[] while that suspect was restrained in handcuffs."  (Doc. 1 at 10).  The complaint further alleges that, after an internal investigation, the allegations were sustained and Turiano was "listed on the Brady List" for aggravated assault.  (*Id.*)  As such, Plaintiff asserts that "the City possessed full knowledge of Turiano's violations."  (*Id.*)  Defendant City of Phoenix argues that this "conclusory reference to an unrelated and irrelevant twenty-year old claim does not impute to the City the necessary knowledge of any propensity for aggravated assault or arresting individuals without probable cause."  (Doc. 8 at 9 n.6; *see also* Doc. 11 at n.1 ["a conclusory reference to an unrelated and decades-old internal investigation involving a single officer is not sufficient to impute necessary knowledge."].)

To sufficiently allege that a public entity "knew of" an employee's "propensity" to commit a certain action, a plaintiff must allege that the public entity "had actual knowledge that its employee committed an act or acts in the past that were similar to the harm suffered

by the plaintiff." *Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1016 (D. Ariz. 2009). Constructive knowledge is insufficient. *Gallagher v. Tucson Unified Sch. Dist.*, 349 P.3d 228, 232 (Ariz. Ct. App. 2015). As noted, Plaintiff alleges Turiano was previously found to have committed aggravated assault during the course of an arrest, actions that were "similar to the harm suffered by Plaintiff." Because Plaintiff also alleges that these allegations were sustained after an internal investigation and that Turiano was subsequently placed on the Brady List, Plaintiff has sufficiently alleged facts to support that the City of Phoenix "had actual knowledge that its employee committed an act or acts in the past that were similar to the harm suffered by the plaintiff." *Doe*, 615 F. Supp. 2d at 1016.

To clarify, Plaintiff alleges that Turiano used excessive force by "pr[ying] at Plaintiff's fingers with extreme force straining his wrists to the point of lacerations and extreme swelling," and, later, "grabb[ing] Plaintiff's hand, still in restraints, and forc[ing] it up and back with the intention to cause further injury to Plaintiff." (Doc. 1 at 2.) Liberally construed, these allegations are sufficient to allege aggravated assault and are raised in Counts Two, Four, Eleven, Twelve, and Thirteen.[10] Accordingly, the City of Phoenix is not immune from Plaintiff's claims in those Counts *to the extent they are based on Turiano's* alleged excessive use of force.

However, the allegation that Turiano was previously found to have committed aggravated assault during the course of an arrest does not support that the City of Phoenix

---

[10]     In Count Ten, Plaintiff alleges a claim of "civil conspiracy" against the City of Phoenix based, in part, on the officers' (including Turiano's) alleged conspiracy to use excessive force against Plaintiff. Although there is no civil action for conspiracy in Arizona, "there is an action for damages caused by acts committed pursuant to a conspiracy." *Estate of Hernandez by Hernandez-Wheeler v. Flavio*, 930 P.2d 1309, 1313 (Ariz. 1997). Under Arizona law, "liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons*, 38 P.3d 12, 37 (Ariz. 2002) (internal quotation and citation omitted). Here, however, Plaintiff directs his civil conspiracy claim *only* against the City of Phoenix. Plaintiff has not, however, alleged any facts to support that the City of Phoenix knew of any of the officers' propensity to engage in conspiracy. Further, Turiano is the only officer for whom the Court has determined the City of Phoenix could be vicariously liable, yet a conspiracy claim requires a meeting of "two or more individuals." Accordingly, because the City of Phoenix is the only identified Defendant in Count Ten, Count Ten will be dismissed. Plaintiff's allegations in Counts Fourteen and Fifteen do not plausibly arise from Turiano's alleged use of excessive force.

had actual knowledge that any other officer had a propensity for committing aggravated assault.  Nor does that allegation support that the City of Phoenix had actual knowledge that any officer—including Turiano—had a propensity for falsely arresting suspects.  As such, although the City of Phoenix is not immune under Arizona Revised Statutes section 12-820.05(B) for Plaintiff's state law claims related to Turiano's alleged use of excessive force, the City of Phoenix is immune pursuant to § 12-820.05(B) *in all other regards* as to Plaintiff's state law claims.[11]

### D.    Punitive Damages

Defendant City of Phoenix is immune from punitive damages for both Plaintiff's state law and federal claims.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); Ariz. Rev. Stat. § 12-820.04.  Accordingly, Plaintiff's Complaint is dismissed to the extent it seeks punitive damages from the City of Phoenix.

### E.    Criminal Actions

In Counts One, Two, and Four, Plaintiff seeks relief pursuant to Arizona Revised Statutes sections 13-1303, -1204, and -1003, respectively.  These are state criminal statutes; they do not authorize civil actions for damages or injunctive relief.  Accordingly, Counts One, Two, and Four are dismissed.[12]

### F.    Eighth Amendment

In Count Nine, Plaintiff seeks relief related to his arrest based on alleged violations of the Eighth and Fourteenth Amendment.  The Eighth Amendment applies only to post-conviction and is not applicable to a claim related to arrest.  Accordingly, Count Nine is dismissed to the extent Plaintiff seeks relief pursuant to the Eighth Amendment.

### G.    Sullivan — Official Capacity

A suit against a defendant in his or her individual capacity seeks to impose personal

---

[11]    Because the City of Phoenix is the only identified Defendant in Counts Fourteen and Fifteen, those counts will be dismissed.

[12]    Defendant City of Phoenix also seeks dismissal of Count Three as improperly brought pursuant to Arizona criminal law.  Count Three is raised pursuant to Arizona Revised Statutes section 12-541 (*see* Doc. 1 at 7), which is not a criminal statute.  Accordingly, the motion to dismiss is denied to the extent it seeks dismissal of Count Three as improperly brought pursuant to Arizona criminal law.

liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). In contrast, a suit against a defendant in his or her official capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.*

Plaintiff names Defendant Sullivan in both his individual and official capacities. To the extent Plaintiff directs his claims against Sullivan in his official capacity, his claims (with the exception of Count Five, discussed *infra*) are duplicative of his claims against the City of Phoenix. Accordingly, Defendant Sullivan is dismissed to the extent Plaintiff names him in his official capacity.

### H.    Failure to State a Claim

#### 1.    Count Three

In Count Three, Plaintiff alleges state law claims for malicious prosecution, false arrest, libel, and slander.

##### a.    *Malicious Prosecution*

Under Arizona law, a claim for malicious prosecution contains six elements: (1) there was a prosecution, (2) it terminated in favor of plaintiff, (3) defendants were prosecutors, (4) defendants were motivated by malice, (5) there was want of probable cause, and (6) the plaintiff sustained damages. *Overson v. Lynch*, 317 P.2d 948, 949 (Ariz. 1957). While a malicious prosecution action may be brought against those "who wrongfully cause the filing of the charges," *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir.2002), if that defendant "loses control over the case once the prosecution has been initiated, his participation in the prosecution thereafter is not such as will subject him to liability." *Walsh v. Eberlein*, 560 P.2d 1249, 1252 (Ariz. Ct. App. 1976).

Here, none of the Defendants are prosecutors, and Plaintiff affirmatively alleges that his prosecution—which was apparently conducted by the Maricopa County Attorney's Office—involved multiple arraignments and the adding and dropping of charges by that office.  Accordingly, Plaintiff has failed to state a claim for malicious prosecution in Count Three for which relief could be granted, and Count Three will be dismissed to the extent Plaintiff alleges Defendants committed malicious prosecution.

### b.    Libel/Slander

Under Arizona Law, a private person suing for libel or slander must prove the following: the Defendant (1) published a false and defamatory statement regarding the person; (2) knowing that the statement was false and defamed the other; and (3) acted in reckless disregard of or negligently failed to ascertain these matters.  *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (citing Restatement (Second) of Torts § 580B (1975)).

Here, Plaintiff alleges only that Defendants "recommended the formal filing of charges under false pretenses."  Plaintiff does not allege this recommendation was "published" or otherwise disseminated publicly.  Accordingly, Plaintiff has failed to state claims for libel or slander in Count Three.

### c.    *Sullivan*

Although Plaintiff directs his claims in Count Three, in part, against Defendant Sullivan in his individual capacity, he makes no mention of, let alone allegations against, Defendant Sullivan in Count Three.  Accordingly, Plaintiff has failed to state a claim against Defendant Sullivan in Count Three.

### 2.    Count Five

Plaintiff asserts a claim of municipal liability against the City of Phoenix in Count Five to the extent it ratified the officers' actions during Plaintiff's arrest and/or to the extent it failed to train the officers before Plaintiff's arrest.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A "person" includes local government entities. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690 (1978). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. *See also Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163, 166 (1993) ("[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury."); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("A municipality may not be sued under § 1983 solely because an injury was inflicted by one of its employees or agents."). Thus, "to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which []he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). "[L]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Municipal liability may also arise when a local government entity fails to adequately train or supervise its employees. *See, e.g., Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."); *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (analyzing failure-to-train *Monell* claim); *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("A failure to train or supervise can amount to a policy

or custom sufficient to impose [§ 1983] liability.") (citation omitted).  Mere negligence in training or supervision, however, cannot not give rise to a *Monell* claim.  *Davis v. City of Ellensburg,* 869 F.2d 1230, 1235 (9th Cir. 1989).  A plaintiff pursuing *Monell* liability based on a failure to train or supervise must allege that the municipality exhibited "'deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (citation omitted).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).  It may be shown if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

"A municipality also can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999).  "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Id.* at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  But "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  The policymaker must have knowledge of the constitutional violation and must make a "conscious, affirmative choice" to ratify the conduct at issue.  *Id.*  "In other words, in order for there to be ratification, there must be

'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL 3911457 *10 (S.D. Cal 2010); *see also Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003) (same).

Finally, although *Monell* claims may have been subject to a lesser pleading standard before *Iqbal* and *Twombly* were decided, it is now well established in the Ninth Circuit that a plaintiff seeking to assert such a claim must allege *facts* that would support the existence of the alleged policy, practice, or custom. *See, e.g., A.E. ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. This standard applies to *Monell* claims . . . .") (citations omitted); *Dougherty*, 654 F.3d at 900-01 ("Dougherty's *Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*. . . . The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation."). *See also Hyer v. City & Cnty. of Honolulu*, 2020 WL 7038953, *6 (D. Hawaii 2020) ("Prior to 2009, the Ninth Circuit . . . regularly held that a claim of municipal liability under Section 1983 was sufficient to withstand a motion to dismiss based on nothing more than bare allegations of an unconstitutional policy, practice, or custom. The low pleading threshold was rejected by the United States Supreme Court in [*Iqbal*]. Since *Iqbal*, courts in the Ninth Circuit have repeatedly rejected *Monell* claims based on conclusory allegations that lack factual content from which one could plausibly infer municipal liability.") (citations omitted); *Brown v. City of Mariposa*, 2019 WL

4956142, *4 (E.D. Cal. 2019) ("In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of an unlawful policy. . . . [W]hile the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court.") (citations and internal quotation marks omitted).

### a. Ratification

Plaintiff alleges that Defendant Sullivan, in his official capacity,[13] "failed to hold accountable the officers under his command, and failed to intervene in the deprivation of Plaintiff's federally protected constitutional rights, therefore ratifying police misconduct." (Doc. 1 at 10). Plaintiff does not, however, allege facts to support that Defendant Sullivan had any knowledge of Plaintiff's arrest or the circumstances related thereto. *Christie*, 176 F.3d at 1239. Accordingly, Plaintiff has failed to allege facts to support a municipal liability claim based on ratification theory.

### b. Failure to Train

Plaintiff alleges that Defendant Sullivan, in his official capacity, "failed to adequately train PPD officers in lawful arrests, charging recommendations, and use of force." (*Id.* at 11.) These allegations are insufficient to support a municipal liability claim premised on a failure to train. Plaintiff does not describe what training Phoenix Police offices receive or explain why such training is deliberately indifferent to the constitutional rights of its citizenry. Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.* Accordingly, Plaintiff has failed to allege facts to support a municipal liability claim based on a failure to train theory.

### c. Conclusion

Because Plaintiff has failed to state a municipal liability claim based on a theory of

---

[13]    *See* Part IV.G, *supra*.

either ratification or failure to train, Count Five will be dismissed.

### 3. Counts Six through Nine

Plaintiff's claims in Counts Six through Nine are directed, in part, at Defendant Sullivan in his individual capacity.[14]  To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  *Monell*, 436 U.S. 658; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged in Counts Six through Nine that Defendant Sullivan personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries.  Indeed, Plaintiff makes no allegations at all against Defendant Sullivan in these Counts. Accordingly, Defendant Sullivan is dismissed from Counts Six through Nine.

**V.    Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has sufficiently stated the following claims:

- A state law claim for false arrest in Count Three against Sleeper, Alvarado, Blalock, and Swartz;

- A Fourth Amendment excessive force claim in Count Six against Sleeper, Gomez, Merena, Alvarado, and Turiano;

- A Fourth Amendment false arrest claim in Count Seven against Sleeper;

- A First Amendment retaliation claim in Count Eight against Sleeper;

---

[14]    The Court has already determined that Plaintiff's claims against Sullivan in his official capacity are duplicative of Plaintiff's claims against the City of Phoenix.  *See* Part IV.G.

1      -   A Fourth Amendment failure-to-intervene claim in Count Nine against Sleeper,

2          Merena, Alvarado, Turiano, and Gomez;

3      -   A state law aiding and abetting claim in Count Eleven against the City of

4          Phoenix to the extent Plaintiff's claim is based on Turiano's alleged excessive

5          use of force;

6      -   A state law intentional infliction of emotional distress claim in Count Twelve

7          against the City of Phoenix to the extent Plaintiff's claim is based on Turiano's

8          alleged use of excessive force; and

9      -   A state law gross negligence claim in Count Thirteen against the City of Phoenix

10          to the extent Plaintiff's claim is based on Turiano's alleged use of excessive

11          force.

12  These Defendants will thus be required to answer the indicated claims.

13  **VI.    Warnings**

14      **A.    Address Changes**

15      If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of

16  address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff

17  must not include a motion for other relief with a notice of change of address.  Failure to

18  comply may result in dismissal of this action.

19      **B.    Copies**

20      Plaintiff must serve Defendants, or counsel if an appearance has been entered, a

21  copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a

22  certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff

23  must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure

24  to comply may result in the filing being stricken without further notice to Plaintiff.

25      **C.    Possible Dismissal**

26      If Plaintiff fails to timely comply with every provision of this Order, including these

27  warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*,

28  963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure

to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2) is **granted**.  Plaintiff is not required to pay the filing fees for this action.

(2)     Plaintiff's "Motion for Leave to Proceed In Forma Pauperis" (Doc. 7) is **denied as moot**.

(3)     Defendant City of Phoenix's Motion to Exceed Page Limit (Doc. 9) is **granted**.

(4)     The Clerk of Court must **file** Defendant City of Phoenix's Motion to Dismiss, currently lodged at Doc. 8.

(5)     Defendant City of Phoenix's Motion to Dismiss (Doc. 8) is **granted in part and denied in part**, as set forth herein.

(6)     Counts One, Two, Four, Five, Ten, Fourteen, and Fifteen are **dismissed** without prejudice.  Counts Three and Nine are **dismissed in part**, without prejudice, as set forth herein.

(7)     Defendants Sullivan, Hiatt, Winfield, Colbert, Seitter Ii, Freudenthal, Herricht, and Warren are **dismissed** without prejudice.

(8)     If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(9)     Defendants Sleeper, Alvarado, Blalock, Swartz, Gomez, Mereno, Turiano, and the City of Phoenix must answer Counts Three, Six, Seven, Eight, Nine, Eleven, Twelve, and Thirteen, as set forth herein.

(10)    The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Sleeper, Alvarado, Blalock, Swartz, Gomez, Mereno, Turiano, and the City of

Phoenix.

(11)    Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(12)    If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(13)    The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(14)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure, as appropriate.  The notice to Defendants must include a copy of this Order.

(15)    A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(16)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and/orRule 4(j)(2) of the Federal Rules of Civil Procedure, as appropriate; and

(b)    within 10 days after personal service is effected, file the return of

1   service for Defendant, along with evidence of the attempt to secure a waiver of
2   service of the summons and of the costs subsequently incurred in effecting service
3   upon Defendant.  The costs of service must be enumerated on the return of service
4   form (USM-285) and must include the costs incurred by the Marshal for
5   photocopying additional copies of the Summons, Complaint, or this Order and for
6   preparing new process receipt and return forms (USM-285), if required.  Costs of
7   service will be taxed against the personally served Defendant pursuant to Rule
8   4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the
9   Court.

10   (17)    Defendants must answer the Complaint or otherwise respond by appropriate
11   motion within the time provided by the applicable provisions of Rule 12(a) of the Federal
12   Rules of Civil Procedure.

13   (18)    Any answer or response must state the specific Defendant by name on whose
14   behalf it is filed.  The Court may strike any answer, response, or other motion or paper that
15   does not identify the specific Defendant by name on whose behalf it is filed.

16   (19)    This matter is referred to Magistrate Judge Deborah M. Fine pursuant to
17   Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as
18   authorized under 28 U.S.C. § 636(b)(1).

19   Dated this 21st day of November, 2023.

Dominic W. Lanza
United States District Judge